IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KYU ANDERSON, | ) |
| Plaintiff, | ) 06 C 2840 |
| vs. | ) Magistrate Judge |
| | ) Arlander Keys |
| GSF MORTGAGE CORP., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Defendant GSF Mortgage Corp.'s ("GSF") Motion for Summary Judgment. Fed. R. Civ. P.56. GSF argues that summary judgment is warranted, because Ms. Anderson, its former employee, has failed to present sufficient evidence from which a jury could infer that her termination violated the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) (West 2008), or the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. For the reasons set forth below, Defendant's Motion is Granted.

## BACKGROUND FACTS

Plaintiff Kyu Anderson worked as a loan processor for Defendant GSF. Ms. Anderson's husband, Scott Anderson, also worked for GSF; he was employed as a loan officer. As a loan processor, Ms. Anderson assisted the loan officers by processing the loans they had solicited. Specifically, Plaintiff prepared loan packages and documentation pursuant to underwriting guidelines and policies; prepared loan documentation files; ensured that all title issues were met and that the loan was

properly recorded; resolved title and loan recording issues; reviewed title reports to evaluate risk; entered loan information into the computer database; and analyzed tax returns, pay stubs, title, and final figures for the underwriter or investor. In addition to her husband, Plaintiff assisted five[1] other loan officers at GSF's branch office in Schaumburg, Illinois.

Plaintiff's supervisor was Thomas Ischkum. At all relevant times, Mr. Ischkum was the Senior Vice President of GSF, and he has held that position for over six years. Ms. Anderson asserts that, by November of 2004, GSF was aware that she was expecting a baby in July of 2005. Shortly thereafter, Mr. Ischkum asked Plaintiff to train Johanna Rivera as a loan processor, so that Ms. Rivera could serve as a replacement for Plaintiff while she was on maternity leave. Mr. Ischkum testified that Ms. Anderson continued performing the "front end" work on the files- which consisted, largely, of gathering and reviewing the relevant documentation- and that she trained Ms. Rivera to perform the "back end" work on the files- which required her to forward the completed filed to the underwriters.

GSF claims that, in February of 2005, it reorganized its business plan in an effort to reduce economic loss at the Schaumburg office. GSF President Philip Siebert consolidated

---

[1] Plaintiff notes that, while individual loan officers came and went, GSF employed six loan officers during her employment, and five loan officers after her termination.

several departments into Tom Ischkum's department to reorganize workflow by eliminating unnecessary positions. GSF claims that the position of loan processor- Ms. Anderson's position-- was eliminated and that the work previously performed by loan processors was reassigned to other employees[2]. Mr. Ischkum testified that, most of the "front end" work that Plaintiff had been performing was taken over by his three assistants, identified as junior loan officers, and the loan officers. Ms. Rivera continued performing the "back end" work.

On February 14, 2005, Mr. Ischkum informed Plaintiff that she was being terminated. Although GSF insists that it offered Plaintiff a new, lower-paying position with the company, Plaintiff denies that this was the case. In addition to her supporting testimony, Plaintiff points to a letter that she received shortly after she was notified of her termination, and

---

[2] GSF claims both that Ms. Anderson's duties were assumed by a number of other existing employees of various rank, including higher-paid loan officers, and lower level employees that were paid less than Ms. Anderson's base salary of $45,150. According to Defendant's Rule 56 Statement of Material Facts, after February 14, 2005, the loan processor position's duties were performed by the Junior Loan Officers (who were now responsible for opening files, preparing verification of Income, Deposit and Employment, and for compliance documents); the Loan Officers (who were now responsible for reviewing credit reports); the Office Manager (who was now responsible for ordering home insurance certificates and title, and for the post-closing check reconciliation); and the Loan Closer (who was responsible for submitting documentation to the lender). See ¶ 16, Def's St. Mat. Fact.

3

notes that the letter does not reference or extend an offer of alternate employment with GSF.

After her termination, loan officers Phillip Downs and Scott Anderson hired Plaintiff to assist them in processing their files. Apparently, Ms. Rivera was not providing the same support to these loan officers and their accounts were suffering[3]. Plaintiff continued assisting Mr. Downs and her husband, until she gave birth to a baby boy, in June of 2005. Notably, Plaintiff's son was not properly added to her insurance plan, and her insurer, and GSF, declined to cover certain expenses relating to his birth, totaling approximately $3,000. At her deposition, Plaintiff admitted that, from the time she was terminated until after her son's birth, she never told anyone that she suspected she had been discriminated against. Plaintiff further admitted that she filed suit against GFS because of the dispute over the declined bill.

## DISCUSSION

### I. Summary Judgment Standards

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

[3] Plaintiff has submitted an affidavit from her husband, Scott Anderson, stating that Ms. Rivera was not providing the level of service that his wife had when she was working for GSF. Of course, this testimony is consistent with, and supportive of, Defendant's position that Ms. Rivera's role was significantly more limited than Plaintiff's.

4

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) ; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

To survive summary judgment, the non-moving party must offer more than "mere conclusory" allegations. Nowak v. St. Rita High School, 142 F.3d 999, 1002 (7th Cir. 1998). See also Matsushita Elec. Indus., Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (The non-moving party must offer more than a "metaphysical doubt as to the material facts.") The non-moving party will lose on summary judgment if he cannot present sufficient evidence to support each element of his case for which he will bear the burden of proof at trial. Celotex, 477 U.S. at 322. Moreover, the Court will disregard all facts not properly supported by the record. Brasic v. Heinemann's Inc., 121 F.3d 281, 284 (7th Cir. 1997).

Under Local Rule 56.1(b), a party opposing a motion for summary judgment shall file a concise response to the movant's statement, which should include "a response to each numbered paragraph in the moving party's statement," including "specific references to the affidavits, parts of the record, and other

supporting materials relied upon." (L. R. 56.1(b)(3)(A)). Failure to comply with the Local Rule may result in the paragraphs with inadequate responses being deemed admitted. *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 689 (7th Cir. 2000). The Seventh Circuit has "repeatedly held that a district court is entitled to expect strict compliance with [Local] Rule 56.1" *Ammons v. Aramark Unif. Servs. Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (noting that substantial compliance does not constitute strict compliance.)

## II. Pregnancy Discrimination Act

The Pregnancy Discrimination amended Title VII to prohibit an employer from "discriminat[ing] against any individual with respect to ... compensation, terms, conditions, or privileges of employment, ... because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. §§ 2000e-2(a)(1); 42 U.S.C. § 2000e(k). In order to avoid summary judgment, the plaintiff may either put "in enough evidence, whether direct or circumstantial, of discriminatory motivation to create a triable issue or by establishing a prima facie case under the *McDonnell-Douglas* formula." *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940 (7th Cir. 1997).

In the instant case, Plaintiff has not pointed to direct or circumstantial evidence of discriminatory motive, but instead has elected to proceed under the indirect, *McDonnell-Douglas* method.

6

Generally, to avoid summary judgment using the indirect method of proof, a plaintiff must establish a prima facie case of pregnancy discrimination, by introducing sufficient evidence that: 1) she was pregnant and her employer knew that she was pregnant; 2) she was performing her duties satisfactorily; 3) she nevertheless suffered an adverse job action; and 4) similarly situated employees outside of the protected class were treated more favorably. *Clay v. Holy Cross Hospital,* 253 F.3d 1000, 1005 (7th Cir. 2001). Upon such a showing, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its employment action, which the plaintiff must then show is pretextual to avoid summary judgment. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *Traylor v. Brown,* 295 F.3d 783, 788 (7th Cir. 2002).

Although both sides failed to address the issue, Plaintiff's case is not the typical, reduction-in-force ("RIF") case analyzed under the traditional *McDonnell-Douglas* framework. When, as here, a plaintiff's position is eliminated as part of a reduction in force and her duties are absorbed by other employees, such cases are referred to as "mini-RIF" cases, and a modified version of *McDonnell Douglas* applies. *Latorraca v. Forsythe Technology Inc.,* 2007 WL 2669019, at *2 (N.D. Ill. Sept. 7, 2007). "In determining whether to apply the RIF or mini-RIF requirements,

7

the key inquiry is whether the employer still needed someone to handle the terminated employee's job functions." *Young v. Illinois Dept. Of Revenue,* 2008 WL 162120, at *4 (C.D. Ill. Jan. 16, 2008). The parties both concede that, after Ms. Anderson was terminated, GSF still needed someone to handle her duties; therefore, despite the parties' joint oversight, the mini-RIF analysis should apply.

The mini-RIF plaintiff's burden with regard to the first three prongs of *McDonnell Douglas* remains the same. However, the fourth prong of *McDonnell Douglas* is considerably easier for a plaintiff to prove in a mini-RIF case: the mini-RIF plaintiff need demonstrate only that a majority of the employees who assumed her duties were not members of the protected class. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 693 (7th Cir. 2000).

In the instant case, Defendant does not dispute that Plaintiff has satisfied the first three elements of *McDonnell-Douglas*. GSF argues only that similarly-situated individuals were not treated better than Plaintiff, noting that none of the existing loan processors remained after GSF implemented its restructuring plan[4]. The relevant inquiry, however, looks not to

---

[4] Defendant's Rule 56 Statement of Fact states only that all other loan processors were terminated as part of GSF's reduction in force. The 56 Statement does not identify the other processors by name, it does not state whether any or all of the other loan processors were pregnant, nor does it reveal whether

8

whether similarly situated individuals outside of the protected class were treated differently, but instead to whether Plaintiff's duties were assumed by non-pregnant individuals.

Not surprisingly, since neither party identified this as a mini-RIF case, the Record is devoid of evidence demonstrating whether Plaintiff's duties were absorbed primarily by pregnant or non-pregnant employees. The oversight is most damaging to Plaintiff, however, as the burden of demonstrating that her duties were absorbed largely by employees outside of the protected class is decidedly hers. *Bellaver v. Quanex Corp.*, 200 F.3d 485, 495 (7th Cir. 2000). "Lacking this essential inference, [Plaintiff] cannot avail herself of the lighter burdens of the mini-RIF analysis." *Young*, 2008 WL 162120, at * 4.

Several cases have held that a mini-RIF plaintiff, who is unable to show that the individuals who assumed her duties were outside of the protected class, has the option of demonstrating her prima facie case under the traditional- and more rigorous-- *McDonnell-Douglas* analysis; that is, she may survive summary judgment by showing that similarly-situated individuals outside

---

the terminated processors were preparing to take leave under the FMLA. However, Exhibit 5 to Mr. Ischkum's Deposition identifies the processors who were terminated around the time Plaintiff was fired; two of those processors are men, and one is a woman. Nevertheless, this Exhibit makes no attempt to explain whether the female processor was pregnant, or whether the male processors were preparing to take or were otherwise on FMLA leave.

9

of the protected class fared better. *See, e.g.,Id.* (citing cases).

To make such a showing, Plaintiff must produce evidence demonstrating that another employee, otherwise comparable to Plaintiff "in all *material* respects," was spared termination. *Crawford v. Ind. Harbor Belt R.R. Co.*, 461 F.3d 844, 846 (7th Cir. 2006)(Plaintiff must show that "members of the comparison group are sufficiently comparable to [Plaintiff] to suggest that [Plaintiff] was singled out for worse treatment.") In determining whether another individual was comparable, the Court will consider "whether the employees 1) had the same job description, 2) were subject to the same standards, 3) were subject to the same supervisor, and 4) had comparable experience, education and other qualifications." *Salas v. Wis. Dep't of Corrections*, 493 F.3d 913, 923 (7th Cir. 2007). However, substantial similarity is all that is required. *Crawford*, 461 F.3d at 846 (noting that the "similarly situated inquiry is a flexible, common-sense one that asks, at bottom, whether 'there are enough common factors . . .to allow for meaningful comparison in order to divine whether intentional discrimination was at play.") (quotations omitted).

Plaintiff points to Johanna Rivera as the similarly-situated employee who was treated better than her. At her deposition, Plaintiff conceded that Ms. Rivera did not have her level of experience, but noted that she was training Ms. Rivera to be her

replacement during her maternity leave. However, the only evidence Plaintiff offers in support of her claim that Ms. Rivera took over her job following her termination consists of an advertisement run by GSF in April of 2007[5] listing Ms. Rivera as a loan processor, and a more contemporaneous document also identifying Ms. Rivera as a loan processor. This second document, Exhibit 5 to the deposition testimony of Mr. Ischkum, lists the GSF employees working at the Schaumburg office between November of 2004 and June of 2005, identifies their job titles, and notes whether the employee had been laid off or offered a new position with GSF. On that document, Ms. Rivera is identified as a loan processor

This evidence is insufficient for several reasons. First, in her Response to Defendant's Rule 56 Statement of Material Fact, Plaintiff admits that Ms. Rivera was not similarly situated, by acknowledging that Ms. Rivera was not performing her job duties after her termination on February 14, 2005. In her Response to Par. 16 of Def.'s Statement of Fact, Plaintiff admits that her loan processing duties were reassigned to a number of individuals, including the junior loan officers, the office

---

[5] As explained below, Plaintiff's Responses to ¶ 16 of Defendant's Statement of Material Fact renders any similarity in titles irrelevant. Moreover, the Court finds that an advertisement run in April of 2007 is not probative of whether GSF undertook to eliminate the loan processor position in February of 2005.

11

manager, and to Ms. Rivera. She specifically concedes that Ms. Rivera was merely submitting the loan documents to the lender. Thus, regardless Rivera's title, the uncontested evidence[6] permits only the inference that Ms. Rivera was performing only a small portion of the duties that were previously assigned to Plaintiff. Therefore, the Court cannot conclude that the two were similarly situated for purposes of *McDonnell Douglas*. *Salas*, 493 F.3d at 923 (an individual is similarly situated if they had the same job description); *Wermer v. LaCrosse County*, 407 F. Supp. 2d 1013, 1025 (W.D. Wis. 2006) ("Although Plaintiff has shown that Dunne held the same job title as he, plaintiff has not established that he and Dunne were similarly situated.") *Pantoja v. American NTN Bearing Mfg. Corp.*, 2005 WL 3542518, at *6 (N.D. Ill. Dec. 22, 2005) (employee who held a different job description is not similarly situated.)

Also fatal to Plaintiff's claim is her failure to submit evidence demonstrating that Ms. Rivera was outside of the protected class. Plaintiff has not identified any evidence in the Record or even argued in her briefs that Ms. Rivera was not pregnant at the time Plaintiff was terminated. The burden of

---

[6] This includes affidavits from Ms. Ischkum, Ms. Rivera and loan officer Michael D. Pate, attesting to the fact that Ms. Rivera did not perform Plaintiff's pre-termination duties, and even the affidavit of Plaintiff's husband, who testified that, following her termination, he "hired" Plaintiff to assist him in closing his files, because Ms. Rivera was not performing Plaintiff's duties.

showing that similarly-situated individuals outside of the protected class were treated more favorably is Plaintiff's, and absent such evidence, summary judgment is warranted. *See, Young v. Illinois Dept. Of Revenue,* 2008 WL 162120, at *4-5 (C.D. Ill. Jan. 16, 2008).

### III. Family and Medical Leave Act.

The FMLA "establishes two categories of broad protections for employees." *King v. Preferred Tech. Growth,* 166 F.3d 887, 891 (7th Cir. 1999). First, the FMLA entitles employees of a covered employer to unpaid leave for up to 12 work weeks in a twelve month period for a "serious health condition," including pregnancy. 29 U.S.C. § 2612(a)(1) (West 2006). The FMLA makes it "unlawful for an employer to interfere with an employee's attempt to exercise any FMLA rights." *Burnett v. LFW Inc.,* 472 F.3d 471, 477 (7th Cir.2006); 29 U.S.C. § 2615(a)(1). Second, it forbids an employer from retaliating against an employee who exercises such rights. *Id.;* 29 U.S.C. § 2615(a)(2).

In her Response to Defendant's Motion for Summary Judgment, Plaintiff devotes four concise sentences in support of her FMLA claim. *See* Pl.'s Resp. at 10. She has made no attempt to explain to the Court precisely why or how Defendant violated the FMLA, she has pointed to no evidence in support of this claim, and she has not cited to a single case demonstrating her entitlement to the protections afforded by the FMLA. *See Plan Trust Funds v.*

*Royal Intern. Drywall and Decorating, Inc.*, 493 F.3d 782, 789 (7th Cir. 2007) (underdeveloped argument citing no authority may be deemed waived); *United States v. Lanzotti,* 205 F.3d 951, 957 (7th Cir. 2000) ("We repeatedly have made clear that perfunctory and underdeveloped arguments and arguments that are unsupported by pertinent authority, are waived.") Nevertheless, even if the Motion were unopposed, Defendant bears the burden of demonstrating that summary judgment is warranted. *Tobey v. Extel/JWP, Inc.,* 985 F.2d 330, 332 (7th Cir.1993)

Although the parties have spent precious little effort analyzing Plaintiff's FMLA claim, a review of the facts indicates that Plaintiff is claiming that Defendant terminated her in an effort to prevent her from exercising her rights under the FMLA. *See Heltzel v. Dutchmen Mfg., Inc.,* 2007 WL 4556735, at *6 (N.D. Ind. Dec. 20, 2007) (explaining the distinction between proving retaliation claims and interference claims under the FMLA). The "distinction does not really make a difference in the end because the crux of [Plaintiff's] claim is that h[er] discharge was wrongfully procured." *Williams v. Illinois Dept. of Correction,* 2007 WL 772933, at *8 (S.D. Ill. 2007).

To prevail on an FMLA interference claim, Plaintiff must establish that: (1) she was eligible for the FMLA's protections, meaning she worked at least 1250 hours in the twelve months preceding her request for leave; (2) GSF was covered by the FMLA;

14

(3) she was entitled to leave under the terms of the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) GSF denied or interfered with her FMLA benefits to which she was entitled. *Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). Notably, an employee is entitled to no greater protections under the FMLA than she would have received had she not attempted to exercise her rights under the statute. *See Clay v. City of Chicago Dep't of Health*, 143 F.3d 1092, 1094 (7th Cir. 1998).

In the instant case, the parties have neither presented arguments nor directed the Court's attention to evidence supporting or undermining Plaintiff's ability to satisfy the five elements of Plaintiff's FMLA interference claim. However, GSF does argue that it terminated Plaintiff for a legitimate, non-discriminatory, business reason- its reduction in force/restructuring- noting that it terminated all loan processors in February of 2005, and that Plaintiff's pregnancy status did not entitle her to greater consideration than the other terminated loan processors. Plaintiff counters that GSF's explanation for her termination is pretextual[7], because Johanna

---

[7] Plaintiff also suggests that Defendant's explanation for her termination was inconsistent and, therefore, incredible, because Defendant at various times referred to her termination as being due to a restructuring, a reduction in force, and a workflow reassignment. The Court disagrees that the terms Defendant used to describe the events leading up to Plaintiff's termination were either mutually exclusive or contradictory.

15

Rivera was retained as a loan processor after GSF's alleged reduction in force. As discussed above, in her Response to Defendant's Rule 56 Statement of Material Facts, Plaintiff concedes that Johanna Rivera performed only a fraction of her duties following her termination, and admits that Plaintiff's remaining duties were absorbed by other existing employees, including the junior loan officers. Thus, consistent with Defendant's explanation, Ms. Rivera did not take over Plaintiff's former position.

In addition, Plaintiff has offered no evidence that Ms. Rivera or any of the other workers who assumed her duties were pregnant, or that they otherwise notified GSF that they intended to take leave under the FMLA. As such, the Court cannot infer that Defendant singled out Plaintiff for worse treatment because she notified GSF that she intended to take leave. Having determined that there is no genuine issue of material fact that Defendant terminated Plaintiff for legitimate business purposes, the Court grants Defendant's Motion for Summary Judgment on Plaintiff's FMLA claim.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is Granted. Plaintiff has failed to point to evidence giving rise to issues of material facts on her PDA and FMLA claims. Therefore, she is not entitled to go to trial, and summary judgment is warranted.

DATE: January 25, 2008     E N T E R E D:

_____
Judge Arlander Keys
United States Magistrate Judge